UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

EUGENE GRAVES,                                            :

                     Petitioner,           :        **<u>MEMORANDUM DECISION</u>**

             - v -                          :        18-cv-738 (DC)

MICHAEL CAPRA, Superintendent of Sing          :
Sing Correctional Facility,

                                 :

                    Respondent.           :

                                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

APPEARANCES:          EUGENE GRAVES
                           *Petitioner Pro Se*
                           DIN 14A0124
                           Sing Sing Correctional Facility
                           354 Hunter Street
                           Ossining, NY 10562

                           ERIC GONZALEZ, Esq.
                           District Attorney, Kings County
                           By:     Arieh Schulman, Esq.
                                   Assistant District Attorney
                           350 Jay Street
                           Brooklyn, NY 11201
                                 Attorney for Respondent

CHIN, Circuit Judge:

           In 2013, following a jury trial, petitioner Eugene Graves was convicted in

the Supreme Court of the State of New York, Kings County (Gary, *J.*), of second-degree

criminal possession of a weapon, third-degree criminal possession of a controlled

substance, and resisting arrest.  Graves was sentenced to twenty years to life imprisonment.  His convictions were affirmed by the Appellate Division, Second Department, *People v. Graves*, 37 N.Y.S.3d 131 (2d Dep't 2016) ("*Graves I*"), and the New York Court of Appeals denied his application for leave to appeal, *People v. Graves*, 68 N.E.3d 108 (N.Y. 2016) (Garcia, *J.*) ("*Graves II*").

On January 31, 2018, Graves filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition").  *See* Dkt. 1.[1]  Graves argues that (1) he was improperly sentenced as a felony offender because his Pennsylvania conviction for aggravated assault did not qualify as a violent felony offense under New York state law, and (2) both trial counsel and appellate counsel rendered ineffective assistance.  *See* Dkt. 1 at 4, 9, 13.  The Kings County District Attorney's Office filed its opposition to the Petition on January 8, 2019.  *See* Dkt. 4.  On May 12, 2023, the case was reassigned to the undersigned.

For the reasons that follow, the Petition is DENIED.

### STATEMENT OF THE CASE

I. *The Facts*

The evidence at trial established the following:

---

[1]      Graves states that he submitted the Petition to the prison mailing system on January 15, 2018.  *See* Dkt. 1 at 21.  The Court received the Petition on January 31, 2018.

On October 8, 2011, around 4:00 am, two police officers stopped a speeding livery cab in the Bedford-Stuyvesant neighborhood of Brooklyn.  Dkt. 4-1 at 385-89.  The officers began questioning the driver and the two passengers and instructed Graves, who was a passenger in the cab, to exit from the back seat.  *Id.* at 397-99, 548.  One officer, Sergeant Miller, observed a bulge near Graves's groin, frisked him, and felt a gun.  *Id.* at 399, 549-50.

When Sergeant Miller attempted to take Graves into custody, Graves punched him and the two struggled for several minutes.  *Id.* at 401-02.  Graves reached several times for his gun, but Miller prevented Graves from reaching his weapon.  On his third or fourth try, Graves managed to reach his weapon, take it out from his pants, and slide it under Miller's bulletproof vest and against the officer's stomach.  *Id.* at 402-07, 568, 572-75.  Miller begged Graves not to shoot him.  *Id.* at 406-07.  Officer Reddin, Miller's partner, called for backup.  *Id*. at 401-02.

As Graves tried to pull the trigger, Miller wedged his finger between the gun's hammer and barrel.  *Id.* at 407, 576-80.  Graves continued to squeeze the trigger and crush Miller's finger, but Miller was able to keep the gun from firing.  *Id*. at 407-08.  After backup officers arrived, Graves was subdued and found to be in possession of a bag of cocaine and $1,300 in cash.  *Id*. at 407, 1016-17, 1276.  Miller was taken to the hospital by ambulance, where x-rays showed that the bone in the tip of his finger had been split and crushed.  *Id.* at 408.

## II.     The State Court Proceedings

### A.     The Indictment and Pre-Trial Proceedings

Graves was indicted in Kings County for first-degree attempted murder, attempted aggravated murder, second-degree attempted murder, attempted aggravated assault upon a police officer, first-degree attempted assault, third-degree criminal possession of a controlled substance, second-degree criminal possession of a weapon, and resisting arrest. Dkt. 4 at 3-4. On September 9, 2013, before trial commenced, the trial court held a *Sandoval* hearing and ruled that portions of Graves's criminal history in New York and Pennsylvania would be admissible if Graves chose to testify. Dkt. 4-1 at 179-91.

### B.     The Trial

At trial, the jury heard testimony from Sergeant Miller, *id*. at 379-600; Officer Reddin, *id*. at 607-674, 728-868; the livery cab driver, *id*. at 450-504; an emergency medical technician who treated Graves and transported him to the emergency room, *id*. at 901-49; the officer who rode in the ambulance with Graves and searched him at the hospital, finding a bag of cocaine and cash, *id*. at 992-1106; the emergency room doctor who treated Miller, *id*. at 872-900; the firearms expert who examined the gun, *id*. at 681-727; and a detective who conducted a post-arrest interview with Graves, collected the livery cab video, and identified the second passenger, *id*. at 951-86.

Graves did not testify or put on a defense. *Id.* at 1163. In closing arguments, defense counsel sought to cast doubt on the officers' testimony and suggested a theory that the gun and drugs were planted on Graves to justify or cover up the injuries that Graves sustained during the arrest. *Id.* at 1252.

On September 19, 2013, the jury found Graves guilty of second-degree criminal possession of a weapon, third-degree criminal possession of a controlled substance, and resisting arrest. *Id.* at 1389-92. The jury acquitted Graves on the attempted murder and attempted aggravated assault charges. *Id.*

C.    *The Sentencing Hearing*

On December 19, 2013, the trial court held a hearing to determine whether Graves's prior Pennsylvania felony conviction was the equivalent of a New York violent felony for the purpose of classifying Graves as a persistent violent felon. *Id.* at 1395. The prosecution introduced the Pennsylvania accusatory instrument, described as the "equivalent of an indictment," and the transcript of the 2007 plea allocution at which Graves pled guilty to aggravated assault in Lehigh County pursuant to Pennsylvania Crimes and Offenses § 2702(a)(3). *Id.* at 1396.

Defense counsel argued that the Pennsylvania statute was not equivalent to second-degree assault under New York Penal Law § 120.05 because the Pennsylvania statute included both attempted and intentional assaults, whereas the New York law statute separated completed assault against a police officer, which was classified as a

5

violent felony, from attempted assault, which was covered under a separate provision and classified as a non-violent felony.  *Id.* at 1398-99.[2]  Defense counsel argued that the plea allocution was necessary to determine which felony Graves had pled guilty to and that both the Pennsylvania statute and the plea minutes were "too vague" to classify the Pennsylvania crime as a violent felony.  *Id.* at 1399-1400.  Counsel also argued that the plea allocution was not clear as to the elements of bodily injury and substantial pain or whether the assault in Pennsylvania consisted of punching or biting.  *Id.* at 1400-03.

The prosecution acknowledged that the Pennsylvania statute, unlike New York's § 120.05(3), could criminalize attempt and conceded that it was necessary to consider the plea allocution to determine whether the conduct to which Graves pled guilty would qualify as a violent felony.  *Id.* at 1404-06.

---

[2]      The Pennsylvania aggravated assault statute under which Graves was convicted provides, in relevant part:

> [A] person is guilty of aggravated assault if he attempts to cause or intentionally or knowingly causes bodily injury to any [] officers . . . in the performance of duty.

18 Pa. Stat. and Cons. Stat. Ann. § 2702(a)(3).

> The New York provision governing second-degree assault provides, in relevant part:

> [A] person is guilty of assault in the second degree when:  [w]ith the intent to prevent . . . a police officer . . . from performing a lawful duty . . . he . . . causes physical injury to such . . . police officer . . . .

N.Y. Penal Law § 120.05(3).

The trial court then reviewed the accusatory instrument and found that "it is very clear that the Pennsylvania charges . . . themselves minimize that vagueness . . . by reciting literally the factual assertions that make up the charges specifically." *Id.* at 1407.  The trial court read the following from the accusatory instrument: "'Eugene Murphy,[3] did attempt to cause or intentionally or knowingly cause bodily injury to Officer Popovich, in the performance of duty, by punching said officer in the face, biting him in the right and left hands, causing swelling to his face and cuts to his hands.'" *Id.* at 1408.  The trial court found that "the language is quite specific and certainly, to my mind, makes out an assault with physical injury." *Id.*  A second charge stated:  "Eugene Murphy did attempt to cause or intentionally, knowingly or recklessly caused bodily injury to Officer Popovich, by punching said officer in the face, biting him in the right and left hands, causing swelling to his face and cuts to his hands." *Id.*

After observing that the two charges listed different states of mind -- as one of them included "recklessly" -- the trial court proceeded to examine the plea allocution.  In the allocution, the Pennsylvania judge had explained the elements of each charge and the factual allegations that supported them. *Id.* at 1411-13.  The "factual basis for the [Pennsylvania] plea," as recited by the Pennsylvania prosecutor, included: "'the defendant resisted arrest, which included not only the struggling with the officers but a punch to Officer Popovich,'" and "'bit him on the hand as they were attempting to

---

[3]        Graves was charged in that case under a different name.  Dkt. 4-1 at 1407.

-- as they were struggling and that's the nature of . . . the aggravated assault against Officer Popovich.'" *Id.* at 1409-10.  The Pennsylvania judge had asked Graves if he "understand[s] that by pleading guilty, [he is] admitting that the District Attorney can prove what they've explained to me?" and Graves had answered "Yes." *Id.* at 1411. After reviewing this colloquy, the trial court remarked that "[n]obody contests the fact that the defendant bit a police officer in the course of his duty making a lawful arrest." *Id.*  The trial court also noted that in the Pennsylvania proceedings the police officer in question was in court, the police officer confirmed that he had been punched in the "[f]orehead," and the prosecutor showed the Pennsylvania judge a photograph of the police officer's injuries.  *Id.* at 1410.  By pleading guilty, Graves acknowledged in the Pennsylvania proceedings that he had committed an aggravated assault by punching and biting the police officer, impairing the officer's physical condition, and causing him substantial pain.  *Id.* at 1412-13.

Based on this, the trial court found that "it is proven beyond a reasonable doubt to this Court that the defendant was convicted of what is a violent felony assault in New York." *Id.* at 1413.  The trial court then asked Graves whether he was "the person who was convicted and sentenced on [the Pennsylvania felony and the New York robbery felony]," to which Graves replied, "Yes, sir." *Id.* at 1415.  When asked whether he wished to challenge the constitutionality of those convictions, Graves declined.  *Id.*

8

The trial court sentenced Graves to twenty years to life for the weapon

possession charge and lesser concurrent sentences on the other charges.  *Id.* at 1423-24.

### D.    Direct Appeal

Graves appealed his convictions to the Appellate Division, Second

Department, asserting the following claims:  (1) the arresting officers violated his Fourth

Amendment rights, and (2) his sentence was improperly enhanced because his

Pennsylvania conviction did not qualify as a violent felony under New York law.  Dkt.

4-2 at 3-4.

As to his second claim, Graves argued that the Pennsylvania and New

York statutes were not equivalent because the Pennsylvania statute included both

"attempt to cause" and "intentionally or knowingly caused" bodily injury, whereas the

New York statute prohibited only a completed assault.  *Id.* at 29-30.  A footnote in

Graves's brief also stated:  "Defense counsel's acquiescence in the court's use of

appellant's Pennsylvania plea allocution should not be considered a waiver of the

propriety of the sentencing court's adjudication but instead constituted ineffective

assistance of counsel."  *Id.* at 32.

On August 20, 2016, the Appellate Division affirmed Graves's convictions.

*See Graves I,* 37 N.Y.S.3d at 132.  The Appellate Division held that (1) the trial court

properly denied the motion to suppress the physical evidence from the pat-down

search because the circumstances gave rise to a reasonable suspicion that Graves was

armed; and (2) the challenge to the sentence was meritless.  *Id.* at 132-33.  The Appellate

Division found that because the Pennsylvania statute criminalized a broader range of

conduct than the equivalent New York statute, "the sentencing court was permitted to

look beyond the statute and scrutinize the accusatory instrument."  *Id.* at 133 (internal

quotation marks and citations omitted).  The Appellate Division concluded that "the

accusatory instrument indicated that the defendant committed a completed aggravated

assault, which, if committed in New York, would constitute a felony."  *Id.*  The

Appellate Division did not reach the question of whether the plea allocution was

admissible or erroneously relied upon by the trial court.  On October 11, 2016, the New

York Court of Appeals denied leave to appeal.  *See Graves II*, 68 N.E.3d at 108.

### E.    State Collateral Review

On December 29, 2016, Graves filed a *pro se* application for a writ of error

*coram nobis* in which he alleged the ineffective assistance of appellate counsel for failing

to effectively argue trial counsel's ineffectiveness at sentencing.  Dkt. 4-2 at 108-25.[4]  On

July 26, 2017, the Appellate Division, Second Department, denied the writ, finding that

Graves "failed to establish that he was denied the effective assistance of appellate

---

[4]     Specifically, Graves alleged that trial counsel failed to object to the trial court's consideration of "nonessential recitals in a foreign indictment" and "immaterial evidence in the defendant's foreign plea allocution," Dkt. 4-2 at 116; failed to "adequately apprise[] himself of the law governing out-of-state convictions," *id.* at 117; predicated his own arguments on "immaterial surplusage contained in inadvisable evidence," *id.* at 119; and failed to argue the possibility of a justification defense to the Pennsylvania crime based on the New York statute's requirement of "lawful duty," *id.* at 120-21.

counsel," citing *Jones v. Barnes*, 463 U.S. 745, 750-51 (1983) (appellate counsel need not

raise every nonfrivolous issue requested by defendant), and *People v. Stultz*, 810 N.E.2d

883, 888 (N.Y. 2004) ("Effective appellate representation by no means requires counsel to

brief or argue every issue that may have merit.").  *People v. Graves*, 56 N.Y.S.3d 469, 470

(2d Dep't 2017) ("*Graves III*").  The New York Court of Appeals denied leave to appeal

on October 19, 2017.  *People v. Graves*, 89 N.E.3d 1262 (N.Y. 2017) ("*Graves IV*").

On May 23, 2017, Graves filed a motion in the Kings County Supreme

Court, pursuant to New York Criminal Procedure Law § 440.20 ("CPL § 440.20"), to set

aside the sentence, arguing that trial counsel was ineffective at sentencing.  Dkt. 4-2 at

138-51.  On August 2, 2017, the Kings County Supreme Court denied the motion,

finding that the claim was procedurally barred because it had not been raised on direct

appeal and, alternatively, that it was meritless.  *People v. Graves*, Ind. No. 8675/2011, Slip

op. (N.Y. Sup. Ct., Kings County, Aug. 2, 2017) ("*Graves V*"); Dkt. 4-2 at 180-81 (citing

New York Criminal Procedure Law § 440.10(2)(c) ("CPL § 440.10(2)(c)").  The Kings

County Supreme Court found that because the Appellate Division had already

determined that the use of the Pennsylvania conviction was proper, claiming ineffective

assistance of trial counsel for unsuccessfully objecting to the use of the conviction was

"clearly not a 'winning argument.'"  *Id.* (citing *People v. Flowers*, 68 N.E.3d 1228, 1232

(N.Y. 2016)).  The Appellate Division denied leave to appeal on October 31, 2017.  *People*

*v. Graves*, Ind. No. 2017-09412, Slip op. (N.Y. Sup. Ct., App. Div., 2d Dep't, Oct. 31, 2017) ("*Graves VI*").  Dkt. 4-2 at 183.[5]

## III.    The Petition

In the Petition, Graves seeks habeas relief on the following grounds:  (1) he was improperly sentenced as a persistent violent felony offender, and (2) he received ineffective assistance from both trial and appellate counsel.  Dkt. 1 at 4, 9, 13.

Respondent filed its opposition on January 8, 2019, and Graves replied on March 1, 2019.  Dkt. 4, 6.  In his Reply, Graves argues, for the first time, that the trial court's use of the plea allocution violated his due process rights.  Dkt. 6 at 15, 20, 25.  He also challenges Respondent's argument that his ineffective assistance of trial counsel claim is procedurally barred because the Kings County Supreme Court, in reviewing Graves's § 440 motion, relied on the procedural rules found in CPL § 440.10(2)(c), whereas Graves brought his challenge under CPL § 440.20.  *Id*. at 33.

---

[5]     Graves also sought to reargue the denial of his § 440 motion by filing a motion in Kings County Supreme Court on August 28, 2017, which that court denied on October 19, 2017.  Dkt. 4-2 at 185-92.  The Appellate Division denied leave to appeal that decision on March 5, 2018.  Dkt. No. 4-2 at 193.

On February 24, 2018, Graves filed a second application for a writ of error *coram nobis* in which he alleged that appellate counsel was ineffective for failing to raise claims related to jury deliberations.  Dkt. 4-2 at 195-219.  The Appellate Division denied that application on September 26, 2018, *People v. Graves*, 81 N.Y.S.3d 910 (2d Dep't 2018), and the Court of Appeals denied leave to appeal on November 28, 2018, *People v. Graves*, 115 N.E.3d 635 (N.Y. 2018).

*DISCUSSION*

I.    *Federal Review of State Convictions*

A federal court may not grant a habeas petition on a claim that was adjudicated on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Harrington v. Richter*, 562 U.S. 86, 97-98 (2011); *Waiters v. Lee*, 857 F.3d 466, 477 (2d Cir. 2017).  Hence, when a claim is adjudicated on the merits, the state court's decision must be accorded "substantial deference."  *Fischer v. Smith*, 780 F.3d 556, 560 (2d Cir. 2015).  "A federal court may reverse a state court ruling only where it was 'so lacking in justification that there was . . . [no] possibility for fairminded disagreement.'"  *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (per curiam) (quoting *Harrington*, 562 U.S. at 103); *see also Wetzel v. Lambert*, 565 U.S. 520, 524 (2012) (per curiam).

A federal court cannot review a habeas petition unless the petitioner "has exhausted the remedies available" in state courts.  28 U.S.C. § 2254(b)(1)(A).  This requirement allows state courts the "opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  *Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir.

13

2005) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)).  "This requires that the prisoner 'fairly present' his constitutional claim to the state courts, which he accomplishes 'by presenting the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it.'"  *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (quoting *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2005)).

Moreover, "federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment."  *Cone v. Bell*, 556 U.S. 449, 465 (2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)).  In other words, if the state court refused to consider an argument because it was procedurally barred under state law, the argument is barred from federal habeas review so long as the procedural bar is "adequate to support the judgment." *Murden v. Artuz*, 497 F.3d 178, 191-92 (2d Cir. 2007).  A petitioner's failure to comply with a state procedural rule qualifies as an adequate and independent state ground, provided that (i) the state court actually "relied on the procedural bar as an independent basis for its disposition of the case," *Harris v. Reed*, 489 U.S. 255, 261-62 (1989) (internal quotation marks and citation omitted), and (ii) the state procedural rule is "firmly established and regularly followed," *James v. Kentucky*, 466 U.S. 341, 348 (1984).

14

## II.    Analysis

In his Petition, Graves contends that:  (1) he was improperly sentenced as a persistent violent felony offender because his Pennsylvania conviction for aggravated assault did not qualify as a violent felony offense under New York law, and (2) both his trial and appellate counsel were ineffective -- his trial counsel for failures at sentencing and his appellate counsel for failing to challenge the alleged ineffective assistance of trial counsel on direct appeal.  Dkt. 1 at 4, 9.  I address the claims in turn.

### A.    The Sentencing Claim

First, Graves argues that he was improperly sentenced under New York state law as a persistent violent felony offender.  According to Graves, the trial court's determination that his Pennsylvania conviction qualified as a violent felony conviction under New York law was erroneous and violated his due process rights.  Dkt. 1 at 5; Dkt. 6 at 25.  The Appellate Division considered Graves's claim on direct appeal and concluded that the accusatory instrument included a factual description of the assault -- punching the officer in the face and biting him on the hands -- which, if committed in New York, would constitute a felony under New York law.  *See Graves I*, 37 N.Y.S.3d at 133.  In addition, as the record shows, the trial court also relied on the transcript of the thorough guilty plea allocution.  Graves's claim fails both procedurally and on the merits.

15

To the extent that Graves challenges his sentence on the ground that it was not permitted by New York state law, this claim is not available on federal habeas review.  "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Courts within this Circuit have repeatedly held that the issue of whether a foreign conviction can serve to enhance a New York sentence is a question of state law that presents no federal question and is not cognizable on habeas review.  *See, e.g.*, *United States ex rel. Dennis v. Murphy*, 265 F.2d 57, 58 (2d Cir. 1959) (per curiam); *Brooks v. McGinnis*, No. 05-cv-5977, 2007 WL 3077041, at *3 (E.D.N.Y. 2007); *Knoesel v. Duncan*, No. 03-cv-2792, 2006 WL 2524198, at *17 (E.D.N.Y. 2006).

Even if Graves's claim were not barred, he has not established that the Appellate Division's merits holding is unreasonable.  Pursuant to New York Penal Law § 70.08(1)(a), a defendant must be sentenced as a persistent violent felony offender if he has been convicted of two or more predicate violent felony convictions.[6]  To determine whether a foreign conviction qualifies as a predicate felony conviction, the conviction must include all the essential elements of a New York felony.  *See People v. Muniz*, 547 N.E.2d 1160, 1162 (N.Y. 1989).  Ordinarily, a court is limited to comparing the foreign and New York criminal statues and cannot consider a foreign accusatory statement, as

---

[6]     Graves was previously convicted of first-degree robbery in New York pursuant to New York Penal Law § 160.15, which he concedes constitutes a predicate violent felony conviction. Dkt. 1 at 5.

such instruments "frequently contain nonessential recitals." *Id*. (citing *People v. Olah*, 89

N.E.2d 329, 330 (N.Y. 1949)).  An exception exists, however, if the foreign statute

criminalizes not one but several acts which, if committed in New York, would

constitute both felonies and misdemeanors. *See People v. Grigg*, 900 N.Y.S.2d 399, 400

(2d Dep't 2010) ("Under these circumstances, it would be appropriate to consider, *inter

alia*, the Florida accusatory instrument to determine the particular act or acts underlying

the defendant's conviction in that state to determine whether they are the equivalent of

a New York felony or violent felony.").

Here, the trial court found that "the Pennsylvania statute is far more

expansive than the New York statute," Dkt. 4-1 at 1407, and therefore, the court was

permitted to consider the accusatory instruments and the plea minutes to determine if

the Pennsylvania conviction would have constituted a New York violent felony. *See

Grigg*, 900 N.Y.S.2d at 400.  Upon review of the accusatory instrument, the trial court

found that it included a description of conduct -- punching and biting -- that constituted

"an assault with physical injury."  Dkt. 4-1 at 1408.  The trial court then turned to the

plea allocution for the "factual basis for the plea," *id.* at 1409, and the allocution

confirmed that Graves "resisted arrest" and punched and bit a police officer, which was

the "nature of . . . the aggravated assault against Officer Popovich," *id.* at 1410.  The

police officer was in court in the Pennsylvania proceedings and confirmed that he had

been punched, and a photograph showing his injuries was also presented to the

17

Pennsylvania court. *Id.* Furthermore, the trial court noted that the Pennsylvania judge had then asked Graves whether he understood that "by pleading guilty, [he is] admitting that the District Attorney can prove" that Graves engaged in the alleged conduct as described, to which Graves had answered "Yes." *Id.* at 1411. On these facts, the trial court found that "it is proven beyond a reasonable doubt to this Court that the defendant was convicted of what is a violent felony assault in New York." *Id*. at 1413. The Appellate Division affirmed the trial court's conclusion. *Graves I*, 37 N.Y.S. at 133.

The state courts' conclusions are not objectively unreasonable. *See* 28 U.S.C. § 2254(d). As the Appellate Division found, the Pennsylvania statute criminalized a broader range of conduct than the equivalent New York statute because the Pennsylvania statute included attempted aggravated assault. A violation of the Pennsylvania statute, therefore, could only constitute a violent felony in New York if the defendant actually caused an injury, rather than merely "attempted" to cause an injury. *Graves I*, 37 N.Y.S. at 133. Considering this difference, the trial court properly reviewed the accusatory instrument and plea allocution and found that the record made clear that "the defendant was convicted of what is a violent felony assault in New York." Dkt. 4-1 at 1413. The Appellate Division agreed, finding that these acts were sufficient to qualify as a completed aggravated assault in New York and that the conviction constituted a violent felony under New York law. *Graves I*, 37 N.Y.S. at 133. Therefore, Graves's sentence was based on a reasonable determination of the facts in light of the

evidence presented in the state court proceeding and was calculated following the trial court's proper review of the accusatory instrument and plea allocution.

Turning to Graves's due process challenge, it is -- as a threshold matter -- unpreserved and procedurally barred. The Appellate Division disposed of Graves's challenge to his sentence purely on the basis of its interpretation of the New York state laws related to assault and found that the sentence was lawful under New York state law without reaching any constitutional dimension. As Graves did not "tender his claim 'in terms that are likely to alert the state courts to the claim's federal nature,'" *Conway*, 763 F.3d at 133 (quoting *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011)), he has not "'fairly present[ed]' his constitutional claim to the state courts," *id.* (quoting *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2005)). Accordingly, the claim is unexhausted. Because Graves has no further avenue to pursue this constitutional claim in state court, the claim is also procedurally defaulted. *See Reyes v. Keane*, 118 F.3d 136, 140 (2d Cir. 1997) ("[A] claim is procedurally defaulted for the purposes of federal habeas review where 'the petitioner failed to exhaust state remedies *and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.*'" (citation omitted)).

Even if the due process claim were not unexhausted and procedurally barred, it would still fail on the merits because Graves has not demonstrated that the trial court's adjudication violated his constitutional rights. It is clear that "a state

criminal defendant has a protected right to due process at sentencing." *Gonzalez v. Kuhlman*, 911 F. Supp. 120, 125 (S.D.N.Y. 1995) (collecting cases).  Therefore, a "federal court may grant habeas relief setting aside a state court sentence in the rare case in which 'an error of law resulted in the improper exercise of the sentencer's discretion and thereby deprived the petitioner of his liberty.'"  *Id*. (quoting *Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir. 1987)).  Yet Graves's sentence, as the Appellate Division concluded, was properly calculated pursuant to New York law considering his Pennsylvania and New York predicate convictions.  *Graves I*, 37 N.Y.S.3d at 133.  Because Graves's sentence is proper under state law and did not involve the trial court's improper exercise of discretion, his due process challenge fails.  *See Gonzalez*, 911 F. Supp. at 125.

For these reasons, Graves is not entitled to habeas relief on his sentencing claim.

### B.   *The Ineffective Assistance of Counsel Claims*

Nor is Graves entitled to habeas relief for his claims that he received ineffective assistance from both his trial and appellate counsel.

Where a petitioner asserts that he received ineffective assistance of counsel, the standard for evaluating counsel's representation is "a most deferential one," even under *de novo* review.  *Harrington*, 562 U.S. at 105.  To prevail on a claim of ineffective assistance under federal law, a petitioner must (1) show that counsel's performance was so deficient as to fall below "an objective standard of reasonableness";

20

and (2) establish prejudice by demonstrating a "reasonable possibility" that, "but for

counsel's unprofessional errors, the result of the proceeding would be different."

*Strickland v. Washington*, 466 U.S. 688, 694 (1984).  "The standards created by *Strickland*

and § 2254(d) are both highly deferential, and when the two apply in tandem, review is

doubly so."  *Harrington*, 562 U.S. at 105 (citations and internal quotation marks omitted).

### 1.    Trial Counsel

Graves raises various complaints about trial counsel's performance,

including that counsel should have better familiarized himself with the law regarding

the sentencing of a persistent violent felony offender, objected to the trial court's use of

the Pennsylvania plea allocution and accusatory instrument, focused on the different

requirements in the New York and Pennsylvania statutes regarding the intent to

prevent a police officer from performing a lawful duty, and objected to the trial court's

reliance on "irrelevant facts immaterial to whether the out-of-state statute was

equivalent to the compared New York statute."  Dkt. 1 at 13-16; Dkt. 6 at 32-33, 36, 39.

At threshold, Graves's ineffective assistance of trial counsel claim is

properly exhausted and is not procedurally barred.  Graves raised this claim in a

footnote in his direct appeal and more substantively in his subsequent CPL § 440.20

motion.  Though the Appellate Division did not address the footnote in its decision

affirming the conviction and sentence, the Kings County Supreme Court did consider

this claim in Graves's CPL § 440.20 motion and held that it was procedurally barred

because it should have been raised on direct appeal and, alternatively, that it failed on the merits. *See Graves V*. The Appellate Division subsequently denied leave to appeal the Kings County Supreme Court's denial of the motion. *See Graves VI*.

Though the Kings County Supreme Court found the claim to be procedurally barred, the provision on which it based its finding has since been amended, which would allow Graves to raise it again in a new section 440 motion. *See Bethany v. Noeth*, 2022 WL 17812574, at *3 (W.D.N.Y. Dec. 19, 2022) (citing cases holding that there is no statute of limitations or a numerical cap that would prevent a petitioner from bringing subsequent section 440 motions). Moreover, as Graves points out in his Reply, the Kings County Supreme Court relied on the procedural rules found in CPL § 440.10(2)(c), *see* Dkt. 4-2 at 180, whereas Graves brought his challenge under CPL § 440.20, where this rule does not apply, *see* Dkt. 6 at 33. Accordingly, the Kings County Supreme Court's reliance on the procedural bar in CPL 440.10(2)(c) was misplaced and the claim is not procedurally barred.

Nevertheless, Graves's claim fails on the merits. The Supreme Court's holding in *Strickland* and its progeny provide that effective counsel has a broad range of strategic choices. *See Strickland*, 466 U.S. at 689 ("[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" (citation omitted)). Upon review of Graves's CPL § 440.20 motion, the Kings County Supreme Court rejected Graves's ineffective assistance claim,

holding that because the Appellate Division found the use of the Pennsylvania conviction to be a proper exercise of judicial authority, any objection to its use by trial counsel would not have prevailed. *See Graves V.*

        The Kings County Supreme Court's conclusion was correct and reasonable based on the facts presented in the state court proceeding. *See* 28 U.S.C. § 2254(d). First, the record indicates that defense counsel did challenge the use of the Pennsylvania conviction by questioning whether the acts to which Graves pled guilty to in Pennsylvania would have qualified as a violent felony offense in New York and arguing that the language of the charged conduct and the Pennsylvania statute were "vague." Dkt. 4-1 at 1399. Contrary to Graves's contention, these challenges by trial counsel demonstrate a sound understanding of the law pertaining to sentencing persistent violent felony offenders. Moreover, due to the difference between the Pennsylvania and New York statutes, the trial court was permitted to look to the accusatory instrument and allocution to determine whether the Pennsylvania conviction qualified as a predicate conviction. *See Grigg*, 900 N.Y.S.2d at 400. Upon review, the trial court properly found that "the charges themselves minimize that vagueness," Dkt. 4-1 at 1407, because "the language" contained in the accusatory instrument "is quite specific and certainly . . . makes out an assault with physical injury" that would be considered a violent felony assault in New York, *id.* at 1408. Graves's contention that trial counsel

should have objected to the trial court's use of the accusatory instrument and allocution is therefore without merit.

Second, Graves's argument that trial counsel was ineffective because he failed to challenge the different intent elements in the two statutes also fails. As Graves points out, the New York statute criminalizes conduct that prevents a police officer from performing a lawful duty, while the Pennsylvania statute prohibits someone from causing bodily injury to a police officer who is performing a duty. Dkt. 1 at 16. The prosecution acknowledged that the Pennsylvania statute "didn't require, like New York, that . . . the defendant be attempting to stop [the officer] from performing a lawful duty." Dkt. 4-1 at 1405. In response, the trial court reviewed the accusatory instrument and found that Graves's conduct toward "'Officer Popovich, in the performance of duty, by punching said officer in the face, biting him in the right and left hands, causing swelling to his face and cuts to his hands[,]' . . . to my mind, makes out an assault with physical injury." *Id*. at 1408. The court then turned to the plea allocution and observed that "[n]obody [during the plea allocution] contests the fact that the defendant bit a police officer in the course of his duty making a lawful arrest." *Id*. at 1411. In light of the trial court's clear recitation of the offense conduct underlying the Pennsylvania conviction and its conclusion that the conduct fit the statutory requirement of preventing an officer from performing a lawful duty, any further challenge by trial counsel concerning the statutory differences would not have prevailed.

Graves also argues that trial counsel should have objected to the trial court's "extension and expansion of the allocution" and its reliance on " irrelevant facts immaterial to whether the out-of-state statute was equivalent to the compared New York statute." Dkt. 1 at 15-16.  Yet Graves does not explain which facts were irrelevant or how their recitation improperly expanded the allocution.  In its review of the allocution, the trial court properly considered the details of the offense conduct to adjudicate it as a predicate conviction.  Therefore, I cannot conclude that trial counsel's purported failure to object to unspecified, "material" facts was prejudicial.

Finally, Graves's remaining arguments about trial counsel are complaints about the arguments that trial counsel *did* raise at sentencing.  Graves contends that counsel should not have raised issues related to the difference between attempted and completed aggravated assault, whether the charged acts "cause[d] bodily injury," and the "vagueness" of both the statute and the facts contained in the plea allocution.  *Id.* at 14; Dkt. 6 at 35-36.  Although these arguments were ultimately unsuccessful in challenging the trial court's determination that the Pennsylvania conviction was a prior violent felony, Graves has not shown that raising these arguments was bad strategy or caused him any prejudice.  The record indicates that trial counsel made multiple plausible challenges to the use of the Pennsylvania conviction to adjudicate Graves as a persistent violent felony offender and that any additional challenge to the use of the

25

Pennsylvania conviction, including objections to the accusatory instrument and the plea allocution, would have been equally unsuccessful.

Graves's inability to demonstrate any prejudice from trial counsel's performance -- viewed together with counsel's consistent challenges at trial and at sentencing -- demonstrates that Graves received meaningful representation at trial that did not fall below any objective standard of reasonableness.  *See Strickland*, 466 U.S. at 693; *People v. Benevento*, 697 N.E.2d 584, 587 (N.Y. 1998) (holding that the core inquiry in analyzing an ineffective assistance claim in New York is "whether the defendant received meaningful representation").  Accordingly, Graves is not entitled to habeas relief on this ground.

### 2. Appellate Counsel

Graves also argues that he received the ineffective assistance of appellate counsel.  He raised this claim in his first petition for a writ of error *coram nobis*, in which he alleged appellate counsel's ineffectiveness for failing to argue that trial counsel was ineffective for failing to object to the use of the Pennsylvania indictment and plea allocution.  The Appellate Division denied the claim on the merits, citing *Jones*, 463 U.S. at 750-51 and *Stultz*, 810 N.E.2d at 888, which both held that effective representation did

26

not require appellate counsel to raise every nonfrivolous issue on appeal.  *See Graves III*, 56 N.Y.S.3d at 470.

The state court's decision followed and reasonably applied Supreme Court precedent in *Strickland* and *Jones*.  Appellate counsel submitted a well-reasoned brief raising two issues, including challenging the use of the Pennsylvania conviction to adjudicate Graves a persistent violent felony offender.  Dkt. 4-2 at 1-32.  Although appellate counsel only raised trial counsel's alleged ineffectiveness in a footnote, this may well have represented a sound strategic decision.  *See Strickland*, 466 U.S. at 690-91 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.").  Because trial counsel was not ineffective in failing to more strenuously object to consideration of the Pennsylvania prior conviction, it would not have been a good strategic move for appellate counsel to have raised this issue on appeal.[7]  *See, e.g., Benevento*, 697 N.E.2d at

---

[7]     As noted, appellate counsel was aware of the potential claim related to trial counsel's acquiescence in the inclusion of the Pennsylvania plea allocution and mentioned it in the footnote.  Yet appellate counsel made the strategic decision not to highlight this claim in the brief.  Because the sentencing court and the Appellate Division focused on the accusatory instrument and not the plea allocution, highlighting the allocution would have been irrelevant and unhelpful.

587 (holding that "a simple disagreement with strategies . . . weighed long after the trial, does not suffice" to prevail on an ineffective assistance claim).

Accordingly, Graves's claims alleging ineffective assistance of trial and appellate counsel do not provide a basis for habeas relief.

*CONCLUSION*

Graves has failed to show any basis for relief under 28 U.S.C. § 2254. Accordingly, the Petition is denied.  Additionally, I decline to issue a certificate of appealability because Graves has not made a substantial showing of the denial of a constitutional right.  *See* 28 U.S.C. § 2253.  Pursuant to 28 U.S.C. § 1915(a)(3), I certify that any appeal taken from this decision and order would not be taken in good faith.

The Clerk of Court is respectfully directed to mail a copy of this memorandum decision and the judgement to Graves at his last address of record.

SO ORDERED.

Dated:       New York, New York
             August 16, 2023

                                    _____ s/DC _____
                                    DENNY CHIN
                                    United States Circuit Judge
                                    Sitting By Designation